IN RE APPEAL OF PENNSYLVANIA RAILROAD COMPANY,
CLASS II ASSESSMENTS, 1953.

Argued December 5, 1955—Decided January 16, 1956.

*Mr. Joseph A. Davis* argued the cause for the appellants Harborside Warehouse Co., Inc., and Charles E. Adams, president (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

*Mr. Leo Rosenblum* argued the cause for the respondent City of Jersey City (*Mr. John B. Graf,* attorney).

The opinion of the court was delivered by

JACOBS, J.   The Appellate Division dismissed an appeal from an order of the Division of Tax Appeals refusing to quash or limit a subpoena *duces tecum* which had been served on Charles E. Adams, president of Harborside Warehouse Co., Inc.   We granted certification under *R. R.* 1:10–2. 19 *N. J.* 325.

The City of Jersey City appealed to the Division of Taxation from 1953 assessments against certain Class II railroad

lands owned by the Pennsylvania Railroad Company. A warehouse building leased by the Pennsylvania to Harborside is situated on part of the lands; the city's tax appeal does not relate to the building but does relate to the land on which the building is located. On May 6, 1954 the city served a subpoena *duces tecum* upon Charles E. Adams, president of Harborside, directing that he appear in deposition proceedings, and produce "all leases in force from October 1, 1949, until the present time, including leases now in force, between Harborside Warehouse Co., Inc., as landlord, and others, as tenants, for portions of premises in the building of the Harborside Warehouse Company, Inc., at 34 Exchange Place, Jersey City, New Jersey, together with all amendments thereof and supplements thereto." On May 11, 1954 Harborside filed notice that it would move before the Division of Tax Appeals to quash the subpoena or, in the alternative, for an order restricting its scope. No affidavits supporting the motion were ever filed but the city filed an affidavit by Charles F. Evans in opposition. Mr. Evans stated that he was a qualified real estate appraiser and had been retained by Jersey City for the purpose of making appraisals upon various second-class railroad lands in connection with 1953 railroad tax appeals; included in such lands were those upon which had been erected "the Harborside Warehouse and two piers known as Piers D and F"; he was engaged in his study of "said and other property and related data, for the purpose of reaching an opinion with respect to the true value thereof as of January 1, 1952"; he considered it essential to secure all available data concerning any leases now in force for the rental of the piers and "all of the rental data concerning the Harborside Warehouse"; he believed that such data was important for two reasons: "First, in order to obtain all economic data having application to said lands within a reasonable time before and after the assessment date of January 1, 1952, and second, in order to determine a pattern or trend of rentals and rental values upon and in connection with second class railroad lands which are the subject matter of the appeal herein."

*R. S.* 54:2–21 provides that the Division of Tax Appeals may, by special order or general rule, permit the taking of depositions in the manner prescribed in the Superior Court. General Rule XII of the Division provides that depositions may be taken "without first obtaining leave of the Division, and at any time after the petition of appeal is filed"; it provides further that the practice shall conform with that prescribed by the rules of civil practice for the Superior Court and specifically adopts *R. R.* 4:16–2 to 6, incl.; *R. R.* 4:18–1 to 4, incl.; *R. R.* 4:19; and *R. R.* 4:20–1 to 7, incl. The Superior Court rules broadly provide for examination on any matter not privileged "which is relevant to the subject matter involved in the pending action" and that "it is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." See *R. R.* 4:16–2; *R. R.* 4:46–4. They embody adequate protective means against unwarranted deposition proceedings; thus *R. R.* 4:20–2 provides that "upon notice and for good cause shown" an order may be entered that the deposition shall not be taken; and *R. R.* 4:46–2 provides that on motion made before the time specified in a subpoena *duces tecum* for compliance therewith, the subpoena may be quashed "if it is unreasonable and oppressive." *Cf. R. R.* 4:20–4.

On October 14, 1954 the Division entered an order denying Harborside's motion to quash or limit the subpoena. Harborside then sought leave to appeal from the Division's order but its application was denied by the Appellate Division. It also filed notice of appeal to the Appellate Division which Jersey City moved to dismiss; decision on this motion was originally reserved but, after full argument, the motion was granted in an opinion by Judge Clapp which determined that (1) the Division's order was interlocutory and not appealable as of right under *R. R.* 2:2, and (2) in any event, the data sought by the subpoena was not irrelevant to the subject matter involved in the tax appeal and was therefore the proper subject of inquiry in the deposition proceedings.

See *In re Pennsylvania R. Co.*, 34 *N. J. Super.* 103 (1955). An appeal to this court, taken without leave, was dismissed on the ground that the case did not fall anywhere within R. R. 1:2; however, we did grant certification on petition by Harborside and its president Charles E. Adams. See *In re Appeal of Pennsylvania R. Co.*, 19 *N. J.* 325 (1955).

The problems incident to intermediate appeals, in advance of the complete and final disposition of the proceedings below, have given rise to much discussion in the cases and legal periodicals. See Frankfurter, J., in *Cobbledick v. United States*, 309 *U. S.* 323, 60 *S. Ct.* 540, 84 *L. Ed.* 783 (1940); Frank, J., in *Pabellon v. Grace Line*, 191 *F. 2d* 169, 179 (2 Cir. 1951); *Hart and Wechsler, The Federal Courts and The Federal System*, 1344 (1953); *Note, Proposals for Interlocutory Appeals*, 58 *Yale L. J.* 1186 (1949). *Cf. Crick, The Final Judgment as a Basis for Appeal*, 41 *Yale L. J.* 539 (1932); *Baltimore Contractors v. Bodinger*, 348 *U. S.* 176, 75 *S. Ct.* 249, 99 *L. Ed.* 233 (1955); *City of Morgantown, W. Va., v. Royal Ins. Co.*, 337 *U. S.* 254, 69 *S. Ct.* 1067, 93 *L. Ed.* 1347 (1949). There are two obviously competing forces—one lays its stress upon the inconvenience and expense of piecemeal reviews and the strong public interest in favor of a single and complete trial with a single and complete review—the other lays its stress upon the dangers of individual injustices which may result from the denial of any appellate review until after final judgment at the trial level. *Cf.* Jackson, J., in *Dickinson v. Petroleum Conversion Corp.*, 338 *U. S.* 507, 511, 70 *S. Ct.* 322, 94 *L. Ed.* 299, 302 (1950). Some jurisdictions, including our neighboring State of New York, have chosen the course which permits intermediate appeals as of right from most interlocutory orders. See *N. Y. Practice Act*, § 609 (*Cahill-Parsons, 2d ed.* 1955). Others, including the Federal Government, have chosen the course which denies the right to appeal from most interlocutory orders. See 28 *U. S. C. A.* §§ 1291, 1292 (1955 *supp.*). The English Judicature Act provides, as do the statutes of some of our states, that interlocutory appeals may be entertained with leave of the appellate court.

*Judicature Act*, 1925 (15 & 16 *Geo. 5, c.* 49) § 31(1)(*i*), 5 *Halsbury's Statutes of England* (2d ed. 1948), 360. See *Note, Proposals for Interlocutory Appeals, supra*, at 1189. *Cf. Moore & Vestal, Present and Potential Role of Certification in Federal Appellate Procedure*, 35 *Va. L. Rev.* 1, 45 (1949).

In *Alexander v. United States*, 201 *U. S.* 117, 26 *S. Ct.* 356, 50 *L. Ed.* 686 (1906), witnesses were directed to appear and produce documents before a special examiner designated by the circuit court to hear testimony in a suit brought by the United States under the Sherman Act. They appealed to the Supreme Court but their appeals were dismissed for lack of any final judgment. In the course of his opinion for the court Justice McKenna pointed out that although orders holding witnesses in contempt for refusing to answer were final, prior orders addressed to them were interlocutory and not appealable under prevailing federal practice. In *Cobbledick v. United States, supra* [309 *U. S.* 323, 60 *S. Ct.* 541], the District Court for the Northern District of California denied motions to quash subpoenas *duces tecum* which directed certain witnesses to appear and produce documents before a grand jury. Their appeals to the Circuit Court of Appeals were dismissed as interlocutory and this action was sustained in a unanimous opinion for the Supreme Court by Justice Frankfurter. He pointed out that Congress had denied "to the appellate courts the power to review rulings at *nisi prius,* generally, until after the entire controversy has been concluded"; that its requirement that appeals be taken from final rather than interlocutory judgments was "not a technical concept of temporal or physical termination" but was "the means for achieving a healthy legal system"; that the requirement of finality would be enforced "not only against a party to the litigation but against a witness who is a stranger to the main proceeding"; and that neither "a party nor a non-party witness would be allowed to take to the upper court a ruling where the result of review will be 'to halt in the orderly progress of a cause and consider incidentally a question which has happened to

cross the path of such litigation.' " See Taft, C. J., in *Segurola v. United States*, 275 *U. S.* 106, 112, 48 *S. Ct.* 77, 72 *L. Ed.* 186, 189 (1927). *Cf. Webster Coal & Coke Co. v. Cassalt*, 207 *U. S.* 181, 28 *S. Ct.* 108, 52 *L. Ed.* 160 (1907). The *Cobbledick* holding has been applied in many later federal cases. See *National Nut Co. of California v. Kelling Nut Co.*, 134 *F.* 2d 532 (7 *Cir.* 1943); *Jarecki v. Whetstone*, 192 *F.* 2d 121 (7 *Cir.* 1951); *Carolina Power & Light Co. v. Jernigan*, 222 *F.* 2d 951 (4 *Cir.* 1955). *Cf. United States v. Vivian*, 217 *F.* 2d 882 (7 *Cir.* 1955).

When the delegates to our Constitutional Convention of 1947 were engaged in drafting a new Judicial Article they were thoroughly familiar with the federal practice, as well as our own, which permitted interlocutory appeals in Chancery but not at law. See *In re Url's Estate*, 5 *N. J.* 507, 512 (1950); *Warren v. Hague*, 11 *N. J. Super.* 311, 314 (*App. Div.* 1951). They were careful to avoid any inflexible course and they left to the Supreme Court's continuing rule-making power the determination as to what interlocutory appeals, if any, should be allowed; in the Judiciary Committee's report it was specifically noted that rules of court would be appropriate "to provide when appeals may be taken from interlocutory orders." See 2 *Proceedings of the Constitutional Convention of* 1947, *p.* 1195 (1951); *Schnitzer, Civil Practice and Procedure*, 6 *Rutgers L. Rev.* 351, 355 (1951). When *Rule* 4:2 (now *R. R.* 2:2) was adopted in 1948 it followed (as did most of our practice rules) the federal precedents by confining appeals to those "from final judgments" except in the four separate classes enumerated in *Rule* 4:2–2 (*R. R.* 2:2–3). The first class related to injunctions and the second to receiverships; they were counterparts of the interlocutory appeals long available in the federal courts within special statutory exceptions prescribed by Congress. See 28 *U. S. C. A.* § 1292 (1955 *supp.*). The third class related to appeals from determinations that the court had jurisdiction over the subject matter or the person, and the fourth related to instances where it was necessary to preserve the *res* or *status quo* and prevent irrep-

arable injury. See *Warren v. Hague, supra*. In passing upon pretrial discovery orders, such as a denial of a motion to quash or limit a subpoena, addressed to either a party or a non-party witness, this court has, for the most part, approved the pertinent principles expounded in the federal cases and has held the orders to be interlocutory and non-appealable as of right. See *City of Newark v. Division of Tax Appeals, Dept. of Treasury*, 7 *N. J.* 8, 12 (1951); *Sunbeam Corp. v. Windsor-Fifth Ave.*, 14 *N. J.* 235, 238 (1953); *Schlossberg v. Jersey City Sewerage Authority*, 15 *N. J.* 360, 364 (1954); *United Cannery Maintenance v. Local 80-A.*, 16 *N. J.* 264, 265 (1954); *Application of Tiene*, 19 *N. J.* 149, 158 (1955). *Cf. In re Tiene*, 17 *N. J.* 170 (1954); *In re Pillo*, 11 *N. J.* 8 (1952).

For present purposes we need refer only to the decision in *Application of Tiene, supra*, which embodies this court's most recent discussion of the subject and which dealt with the earlier opinions. There, witnesses were subpoenaed to produce certain records before a court appointed expert conducting an investigation into the financial affairs of Jersey City pursuant to *R. S.* 40:6-1. They moved unsuccessfully to quash or limit the subpoenas on the ground, *inter alia*, that their "constitutional guarantees against unreasonable search and seizure or an invasion of the right of privacy" were being violated. *Cf. United States v. Bryan*, 339 *U. S.* 323, 331, 70 *S. Ct.* 724, 94 *L. Ed.* 884, 891 (1950); *Schlossberg v. Jersey City Sewerage Authority, supra*, 15 *N. J.*, at *page* 372. This court, in an opinion by Chief Justice Vanderbilt, took the position that an order denying a motion to quash a subpoena *duces tecum*, addressed to either a party or non-party witness, is interlocutory in nature and not appealable as of right. See 19 *N. J.*, at *page* 158. The proceeding below still awaited final determination and the refusal to quash the subpoena was viewed as simply constituting an intermediate step in the regular course thereof. However, if the witnesses were ultimately held in contempt for disobeying the subpoenas the independent order of contempt would be considered final and appealable; and since

they had no earlier opportunity for appeal, the witnesses would have, on such appeal, fair opportunity to review the validity of the subpoenas as well as the ensuing order of contempt. *Cf. In re Tiene, supra,* 17 *N. J.,* at *page* 178. See *Alexander v. United States, supra; Cobbledick v. United States, supra; Schnitzer, Civil Practice and Procedure,* 10 *Rutgers L. Rev.* 351, 354 (1955). In commenting on *Application of Tiene, supra,* Professor Schnitzer had this to say (10 *Rutgers L. Rev.,* at 354) :

> "The issue as to the appealable character of orders to testify is actually the point of conflict between two opposing policies; one which would favor the protection of private rights, and the other which would foster the public interest in uninterrupted trials. If a pretrial order to testify is immediately appealable, so is a trial direction to a witness to answer a question after an objection has been overruled. Viewed realistically, the rule laid down by the Supreme Court amounts to a decision that a witness can look only to the trial judge for protection of personal privilege, unless the witness is willing to test his rights by non-compliance and an eventual appeal from a contempt conviction."

See *Note, Appealability of order pertaining to pretrial examination, discovery, interrogatories, production of books and papers, or the like,* 37 *A. L. R.* 2d 586, 591 (1954).

In *State v. Le Fante,* 14 *N. J.* 584, 592 (1954), we pointed out that the severe curbs which our original rules placed on intermediate and fragmentary appeals aided in avoiding "the delay and the congestion that all too often prevail in judicial systems that freely permit piecemeal appeals and interlocutory reviews." Nevertheless exceptional situations arose from time to time where the interests of justice strongly suggested that some mode of review in advance of final judgment should be made available. Accordingly, in 1950 *Rule* 4:2–2 was amended to permit the Appellate Division to entertain an appeal from an interlocutory order where it appeared that the grounds of appeal were substantial and the appeal, if sustained, would terminate the litigation. See 6 *Rutgers L. Rev.* 357 (1951). In 1953 the Appellate Division was granted express power to permit an appeal for the review of legal errors from an order

granting a new trial. See 9 *Rutgers L. Rev.* 320 (1954). Finally in 1955 the Appellate Division was granted comprehensive power to permit, in its discretion, an appeal from any interlocutory order or judgment or from an interlocutory decision or action of any state administrative agency when the grounds of appeal appeared substantial. See *R. R.* 2:2–3(*b*); *R. R.* 4:88–8(*b*). Although only a short time has elapsed, actual experiences to date strongly support the belief that this discretionary power in the Appellate Division will serve to meet satisfactorily the troublesome problems incident to interlocutory appeals. Its careful exercise should enable preliminary appeals in the exceptional cases where, on a balance of interests, justice suggests the need for a review in advance of final judgment; and it should not in any significant measure entail the delay, expense and calendar congestion which are said to prevail in jurisdictions where interlocutory appeals are indiscriminately available as a matter of right.

■■ The opportunity to apply for leave to appeal should reduce the temptation to treat some interlocutory orders as final for appeal purposes where they invoke rights "too important to be denied review." Jackson, J., in *Cohen v. Beneficial Industrial Loan Corp.*, 337 *U. S.* 541, 546, 69 *S. Ct.* 1221, 93 *L. Ed.* 1528, 1536 (1949); *Underwood, Appeals in the Federal Practice from Collateral Orders*, 36 *Va. L. Rev.* 731 (1950). Discovery orders in the course of a proceeding are not, in any real sense, final judgments as contemplated by the language of *R. R.* 2:2–1, since the proceeding must still go forth towards trial and ultimate determination; it would seem fair and just that they now be considered appealable only with leave under *R. R.* 2:2–3(*b*) whether they direct persons to testify or refuse to do so. See *Schnitzer, Civil Practice and Procedure, supra,* 10 *Rutgers L. Rev.* 341, 353 (1955); *State v. Cicenia*, 6 *N. J.* 296, 299 (1951); *Bergman v. Hall*, 21 *N. J. Super.* 476 *(App. Div.* 1952); *Warren v. Hague, supra*, 11 *N. J. Super.*, at *page* 314; *Note, supra*, 37 *A. L. R. 2d*, at 599. But *cf. Application of Tiene, supra*, 19 *N. J.*, at *page* 160. In any

event, there is no longer any basis whatever for doubting that an order which refuses to quash or limit a subpoena *duces tecum* in deposition proceedings in advance of trial, is interlocutory in nature and is not appealable as of right. See *Application of Tiene, supra.*

The appellants contend that the foregoing relates to strictly judicial proceedings and does not apply to discovery orders issued to non-party witnesses in administrative proceedings. We find neither reason nor persuasive authority in support of this contention. The proceeding before the Division of Tax Appeals had attributes comparable to a court proceeding and should fairly be subjected to comparable principles. See *Rainier's Dairies v. Raritan Valley Farms,* 19 *N. J.* 552, 562 (1955); *R. R.* 2:2–3(*b*); *R. R.* 4:88–8(*b*). In *City of Newark v. Division of Tax Appeals, Dept. of Treasury, supra,* a taxpayer appealed to the Division of Tax Appeals and obtained an order from the Division directing the city to answer two interrogatories. The city appealed to the Appellate Division and the cause was certified by this court which held that the order was interlocutory and not appealable as of right. In the course of his opinion for the entire court, Justice Case said:

"The allowing of the interrogatories was procedural and tended to elicit information which, while leaving the taxpayer still with the burden of proof, would provide matter pertinent to the issue. Intermediate processes incident to litigation should not be converted into impediments to speedy trials by innumerable appeals with consequent vexatious delays and miscarriages of justice. *Hopper v. Gillet,* 105 *N. J. L.* 150 (*E. & A.* 1928)."

While it is true that Justice Case was dealing with a party witness his observations seem as fully applicable to non-party witnesses. See *Cobbledick v. United States, supra; Application of Tiene, supra.*

Although they cite no direct authority in support, the appellants suggest that prior to the adoption of the Constitution of 1947 they could have reviewed the interlocutory order of the Division of Tax Appeals by writ of

*certiorari* and that consequently they are entitled to review as of right under *Article* VI, § 5, *par.* 4. See *Hinchman v. Cook*, 20 *N. J. L.* 271 (*Sup. Ct.* 1844); *Mowery v. Camden*, 49 *N. J. L.* 106 (*Sup. Ct.* 1886). That Article supersedes prerogative writs and provides that, in lieu thereof, hearing and relief shall be afforded as of right in the Superior Court "on terms and in the manner provided by rules of the Supreme Court." It was intended to obviate the procedural difficulties which accompanied the distinctions between the various common-law prerogative writs and to insure that judgments in administrative proceedings would be judicially reviewable as of right in much the same manner as are trial judgments in judicial proceedings. Throughout the Constitution and, particularly in the Judicial Article, there is evident the wholesome desire of the delegates that flexibility be attained so that new problems confronting present and future generations could be dealt with adequately as they arose without need for repeated constitutional revisions. Thus *Article* VI, § 2, *par.* 3 granted comprehensive and continuing power to the Supreme Court to promulgate rules of practice and procedure in all courts, subject to law, and *Article* VI, § 5, *par.* 4 directed, with even greater breadth, that the judicial review in lieu of the prerogative writs shall be in the manner provided by rules of the Supreme Court. See *Fischer v. Bedminster Tp.*, 5 *N. J.* 534, 541 (1950). In its rules the Supreme Court has made adequate provision for appeals, with leave, from interlocutory orders from both courts and state administrative agencies (*R. R.* 2:2–3(*b*); *R. R.* 4:88–8(*b*)) and for appeals as of right from final judgments of both courts and state administrative agencies (*R. R.* 2:2–1; *R. R.* 4:88–8(*a*)). It seems to us that these rules fairly carry out the farsighted constitutional purposes expressed and implicit in the Judicial Article; any contrary view would nullify the progressive steps taken by this court in dealing with interlocutory appeals and would strait-jacket our judicial system by compelling courts to hear and determine appeals from all interlocutory administrative determinations, no matter how trivial or patently sound. It is

inconceivable that the constitutional delegates, who strove so diligently to frame a simplified judicial system calculated to serve modern needs, ever envisioned any retrogressively rigid result such as that suggested by the appellants. We unhesitatingly reject the contention advanced by the appellants and hold that the pertinent court rules were constitutionally promulgated and provide suitably for review of state administrative determinations as of right where they are final and with leave where they are interlocutory.

We are satisfied that the Appellate Division properly dismissed the appeal as interlocutory and that its judgment must be affirmed. However, it also considered the meritorious question presented and we shall, in the interests of complete justice, do the same. See *Application of Tiene, supra,* 19 *N. J.,* at *page* 161. The subpoena *duces tecum* addressed to Charles E. Adams as president of Harborside was not invalid on its face. The issue in the tax proceeding was the true value of lands, including the very land on which Harborside's warehouse was located. In reaching an opinion as to such true value a thorough expert would seek out all the available factors, including the rental terms of the lease from the owner to Harborside and the subleases from Harborside to its tenants. The lease from the owner to Harborside would presumably show direct rental income which "may be a relevant factor in reaching true value of real estate for tax assessment purposes." See *Aetna Life Ins. Co. v. City of Newark,* 10 *N. J.* 99, 106 (1952). *Cf. Township of North Bergen, In Hudson County, v. Bergen Boulevard Holding Co.,* 133 *N. J. L.* 569, 574 (*E. & A.* 1946). The subleases may tend to show whether the rental being paid by Harborside to the owner was "realistic and a true reflection of value" (*In re Pennsylvania R. Co., supra,* 34 *N. J. Super.,* at *page* 109), or was influenced by intercorporate relationships or other extraneous considerations. And the subleases may also indicate current trends of rental value which may fairly be considered by the expert in reaching his conscientious determination of true value. See *In re Erie Railroad System,* 19 *N. J.* 110, 129 (1955). *Cf.*

*Delaware, L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 434 (1952).

Recent judicial attitudes favor more liberal discovery provisions and less rigid evidential restrictions as aids in the search for truth and justice. See *Lang v. Morgan's Home Equipment Corp.,* 6 *N. J.* 333, 338 (1951); *Miller v. Trans. Oil Co.,* 18 *N. J.* 407, 413 (1955). When Harborside sought to quash or limit the subpoena which was valid on its face and had been duly issued in accordance with the governing statute and the rules of the Division, it had the burden of making a proper showing of good cause under *R. R.* 4:20–2 or unreasonableness or oppressiveness under *R. R.* 4:46–2. *Cf. R. R.* 4:20–4. Professor Moore has aptly noted that in pretrial discovery proceedings there is a more liberal standard of relevancy than at the trial and that a subpoena *duces tecum* for the production of records in advance of trial should be upheld unless under the objector's showing "it is 'palpable that the evidence sought can have no possible bearing upon the issues.'" See 5 *Moore's Federal Practice* (2d ed. 1951), 1723; 4 *Id.* (2d ed. 1950), 1065. In the instant matter the appellants made no showing which called for quashing the subpoena. They submitted no affidavits or other data to support their motion and the only material presented was the affidavit of the city's expert that he desired the subleases in order that he might have all economic data relating to the lands and that he might determine a pattern or trend of rentals and rental values in connection therewith. It seems clear that on the record before the Division it could not fairly be said that the city was not entitled to the information sought. The appellants advance the final point that upon the denial of their motion to quash they should have received alternative relief in the form of some limitation on the subpoena. See *R. R.* 4:46–2. But they at no time indicated what the limitation should be or the need or justification therefor. The direction in the subpoena that Mr. Adams appear and bring with him the leases from Harborside to its tenants does not appear to be unfair or unduly burdensome; if during the taking of his

414

testimony occasion arises for relief, the court rules (adopted by the Division) furnish an appropriate course. See *R. R.* 4:20–4.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.