67 N.J. Super. 199 (1961)
170 A.2d 467
STATE BOARD OF MEDICAL EXAMINERS, COMPLAINANT-RESPONDENT,
v.
ALBERT L. WEINER, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1961.
Decided April 20, 1961.
*200 Before Judges CONFORD, FREUND and KILKENNY.
Mr. Burrell Ives Humphreys, Deputy Attorney General, argued the cause for complainant-respondent (Mr. David D. Furman, Attorney General, attorney).
Mr. David Seliger argued the cause for respondent-appellant (Messrs. Plone, Tomar, Parks and Seliger and Mr. Charles A. Cohen, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is a motion for leave to appeal the refusal of the State Board of Medical Examiners ("Board" hereinafter) to terminate its previous suspension of the license to practice medicine and surgery of the movant, Dr. Albert L. Weiner.
It appears that during a period of several months prior to October 25, 1960 a substantial number of patients of the movant, after being treated by him (for what ailment it does not appear in the papers before us) by parenteral injections, developed serum hepatitis. Fourteen of them died. On the date mentioned the State Commissioner of Health issued an order to the movant to cease the administration of parenteral and other drugs and materials until further *201 notice "in the interest of protection of public health based upon evidence of an unusual incidence of mortality due to an infectious or other toxic agent."
On November 16, 1960, it is stated in the Attorney General's brief, Dr. Weiner was notified to appear before the State Board of Medical Examiners' Committee on Illegal Practice. He appeared and was questioned concerning the outbreak of serum hepatitis. On November 17, 1960 the secretary of the Board wrote Dr. Weiner that the Board at a meeting on November 16, 1960 determined that his license to practice medicine should be "temporarily suspended, effective immediately, until the conclusion of the Board's investigation into certain alleged practices in the treatment of certain of [his] patients." The action was stated to be based "on the opinion that to continue the privilege of license to practice medicine in New Jersey to a doctor where the morbidity and mortality has reached the proportion which appears to be occurring in your practice is not in the public interest."
No complaint or proceeding of any kind has been instituted by the Board since that time, nor has Dr. Weiner been served with specific charges or afforded a hearing or other opportunity to meet any charges against him, as is purportedly required by R.S. 45:9-16 before any suspension or revocation of license (with exceptions not here applicable) may take place. But an ex parte investigation by the Board and other health agencies has been and, we are advised, is still going on to determine the precise cause of the outbreak of the disease.
On January 13, 1961 the movant filed with the Board a petition to terminate the suspension of his license, asserting he had "given such aid in the investigation * * * as he has been requested to give," and that more than a reasonable time to complete the investigation had elapsed. On February 13, 1961, no response having been received from the Board, movant's attorneys wrote to it requesting information on the status of the petition. The Attorney *202 General responded for the Board February 28, 1961, stating that a report was being awaited from a liver specialist on an investigation being made for the Board and other state health agencies and that no final action would be taken until the report was received. It is not disclosed whether such a report was eventually received, but we were advised at the hearing of this motion that the investigation was still proceeding, another of Dr. Weiner's patients having died of the disease in March 1961.
A meeting of the Board took place on March 8, 1961 and Dr. Weiner's petition for reinstatement discussed, but, according to the affidavit of the secretary of the Board, "no action or decision was taken thereon." In consequence thereof this motion was filed by the movant.
Movant's position is that the suspension or the failure to lift it after a reasonable time had elapsed for investigation of the outbreak of the disease and his alleged connection with it and for the filing of charges against him which he might meet at a hearing, was violative of his rights under the statute. The total suspension of his license to practice for the four months which had elapsed at the hearing of the motion, and the prospect of its indefinite continuance without preferment of charges and hearing, obviously aggrieve him.
In opposition, the Attorney General submits an affidavit by Dr. Dougherty, Director of the Division of Preventable Diseases in the Department of Health, dated March 23, 1961, stating that an investigation is still being pursued into the matter by the Board, the State Health Department and the Bureau of Inspectors of the Division of Professional Boards; and that in his "considered medical opinion the epidemiological, clinical and pathological findings show that the illnesses were infectious, viral in origin and transmitted by parenteral means." He further says that in his "considered medical opinion the above described outbreak of serum hepatitis and the illnesses and deaths therefrom resulted from the activities of Doctor Weiner, to wit, his repeated *203 and continued failure to use reasonable, standard and accepted medical practices in the treatment of his patients." The "reasonable, standard and accepted medical practices" referred to are not specified in the affidavit, nor is it stated how they were violated by the licensee. It is to be noted in this connection, surprisingly, that negligence or malpractice, no matter how gross, is not specified in the statute which lists the kinds of offenses or transgressions for which the Board may suspend or revoke a medical license (N.J.S.A. 45:9-16). Convictions or pleas amounting to guilty on indictments or informations of certain criminal offenses are so listed, and the Attorney General suggests that one such, "crime involving moral turpitude," might be encompassed by Dr. Weiner's conduct, considered as repetitive gross negligence, but there is as yet no such indictment or information on file, much less a conviction or plea thereto.
However, the Attorney General informs us that the subject matter hereof is being, or shortly will be, presented to the Camden County grand jury and that indictments are expected to ensue. It is argued that an administrative suspension is proper when it occurs "in connection with an investigation directed toward criminal prosecution"; moreover, that the Board's action was not punitive against Dr. Weiner, as in cases of suspensions or revocations under the statute, but protective of the public interest pending the outcome of an investigation looking to criminal proceedings being brought against the licensee. It seems, sub silentio, to be conceded that the Board does not propose, whether for lack of evidence or jurisdiction, or otherwise, to institute disciplinary proceedings against the movant under the statute cited above.
This motion is not, of course, the appropriate occasion for a consideration of the merits of the Board's claim of right of suspension of Dr. Weiner for the purposes indicated. The problem before us is whether this motion properly invokes the discretionary jurisdiction of this court to allow leave to appeal, as from an "interlocutory decision *204 or action" of a state administrative agency, within R.R. 2:2-3. We are satisfied that the action of the Board here is final, reviewable as of right, R.R. 4:88-8; N.J. Const., Art. VI, § 5, par. 4, rather than interlocutory and appealable only on discretionary leave by the Appellate Division under R.R. 2:2-3(a).
In Adams v. Adams, 53 N.J. Super. 424, 429 (App. Div. 1959), certification denied 30 N.J. 151 (1959), we stated that:
"* * * an interlocutory judgment is defined as one `given in the middle of a cause on some plea, proceeding or default which is only intermediate and does not finally determine or complete the suit. Such orders or decrees relate to questions of law or practice settling only some intervening matter, collateral to the issue and not touching the merits of the action.' 4 C.J.S., above [Appeal and Error], § 94, p. 263; 2 Am. Jur., above [Appeal and Error], § 23, p. 863."
Neither the November 16, 1960 suspension of the license of movant nor the subsequent refusal to cancel that action were actions or decisions "in the middle of" a cause or proceeding. For an administrative action to be "interlocutory," within the meaning and policy of our rule of practice distinguishing for purposes of appealability between interlocutory and final actions or decision, the action must be incidental to and a procedural phase of a specific cause or proceeding such that the parties can reasonably contemplate that such proceeding will eventuate in a final decision, action, or judgment, review of which will enable review of the interlocutory action as well. See the comprehensive discussion in Appeal of Pennsylvania Railroad Co., 20 N.J. 398, 404-412 (1956).
No proceeding in the sense indicated has ever pended before the Board, nor does such a proceeding pend now. The administrative investigation is not such a proceeding. The Attorney General's opposition papers on this motion indicate that the movant does not even have any reason to expect that the Board will ever institute any statutory proceeding *205 against him unless he pleads guilty to or is convicted of a criminal offense. However that may be, there is no presently pending proceeding in respect of which the Board's continuing maintenance in effect of the suspension can be regarded as interlocutory action. Not being interlocutory, it must be regarded as final, since, whatever may ultimately be held on the merits concerning the legality of the Board's action with respect to this licensee, in the background of the grave circumstances here shown, he clearly is aggrieved by the continuing suspension of his license and has a right to have a judicial determination as to his rights in the matter (assuming no other procedural or substantive impediment to review).
The Attorney General argues that there is nothing presented for review here since the complaint is against inaction, rather than action. But our courts have more than once recognized that inaction by an administrative agency can be as destructive of a citizen's rights as action and held that aggrievement in such circumstances is remediable in the courts. Mathews v. Finley, 46 N.J. Super. 175, 177 (App. Div. 1957), certification denied sub nom. Mathews v. Neeld, 25 N.J. 283 (1957); and see Lettieri v. State Board of Medical Examiners, 24 N.J. 199, 206 (1957); De Nike v. Bd. of Trustees, etc., Retirement System, 62 N.J. Super. 280, 295 (App. Div. 1960), affirmed 34 N.J. 430 (1961); cf. Central R.R. Co. of New Jersey v. Neeld, 26 N.J. 172, 185 (1958), certiorari denied 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958). It has been suggested that administrative agency conduct should be considered ripe for judicial determination when the interests of the citizen are in fact subjected to or imminently threatened with substantial injury. 3 Davis, Administrative Law (1958), § 21.10, p. 200.
The Attorney General has also offered objections based upon the timeliness of the institution of the proceeding by the movant, asserting that the time has passed within which review from the order of November 16, 1960 could have *206 been sought. R.R. 1:3-1 (b) and (c); R.R. 4:88-15. To this there are two responses.
First, no one can reprove the movant for failure to seek immediate review of the November 16, 1960 order. The common sense of the situation, whatever the legalities, called for permitting the state authorities a reasonable period of time to conduct their investigation before being confronted with a review proceeding in the courts. It would be unfair to penalize Dr. Weiner for failing to take legal action earlier than he did. See R.R. 4:88-15(c). Moreover, his filing a petition with the Board for reinstatement in the first instance rather than going to court was also a reasonable and salutary step, designed to exhaust his administrative remedy before seeking judicial relief.
But the determinative factor is that the continuance in effect of the order of suspension is an action of continuing adverse impact upon the licensee. If the Board was wrong in suspending the license, there is a continuing right to have it restored. Lettieri v. State Board of Medical Examiners, supra (24 N.J., at pp. 205, 206). Only if the Board acted with unmistakable finality on the petition for reinstatement would the time period for institution of review proceedings begin to run against the licensee. Ibid.; De Nike v. Bd. of Trustees, etc., Retirement System, supra.
The motion for leave to appeal is denied, without prejudice. Movant is allowed 10 days from the filing of this opinion to file an appeal as of right. Consideration should be given to the desirability of making the State Commissioner of Health a party, in view of his concern and previous action in respect of the subject matter. No costs.