NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3535-21

AVA SATZ,

      Plaintiff-Respondent,

v.

ALLEN SATZ,

      Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 18, 2023**
>
> **APPELLATE DIVISION**

Argued July 18, 2023 – Decided August 18, 2023

Before Judges Whipple, Susswein and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2630-18.

Allen Satz, appellant, argued the cause pro se.

Angelo Sarno argued the cause for respondent (Synder Sarno D'Aniello Maceri & da Costa, LLC, attorneys; Angelo Sarno, of counsel and on the brief; Michelle Wortmann, on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

In this post-judgment matrimonial matter,[1] defendant Allen Satz appeals from various Family Part orders enforcing provisions of the marital settlement agreement (MSA) and awarding counsel fees to plaintiff Ava Satz.[2] After carefully reviewing the record in light of the arguments of the parties and the applicable legal principles, we conclude the trial court did not abuse its discretion in ordering defendant to comply with explicit and detailed provisions of the MSA. Nor did the trial court abuse its discretion in awarding counsel fees to plaintiff based on defendant's failure to comply with the MSA and the court's orders. We therefore affirm all orders defendant challenges in this appeal.

---

[1] We heard argument in this appeal back-to-back with argument in another appeal brought by defendant in which he challenges the fees awarded to the court-appointed guardian ad litem. Because the present appeal involves different issues and different parties in interest, we have not consolidated the appeals and instead issue separate opinions.

[2] Defendant, who is self-represented, filed numerous notices of appeal. In this opinion, we address: (1) his appeal from paragraph four of an October 20, 2021 order enforcing Article IX of the MSA and requiring him to sign an arbitration agreement pursuant to paragraph one of the MSA; (2) paragraph six of a December 6, 2021 order directing him to participate in beis din—rabbinical court—proceedings pursuant to Article IX of the MSA; and (3) paragraphs four and eleven of a March 25, 2022 order enforcing paragraph six of the December 6, 2021 order and granting plaintiff's application for counsel fees.

I.

Plaintiff and defendant married in February 2006. They have four children together, born between February 2007 and May 2015. After twelve years of marriage, plaintiff and defendant separated in 2018. Plaintiff filed a complaint for divorce in June 2018.

The parties engaged in two years of contentious litigation prior to the divorce trial, which began in September 2020. They continued attempts to settle their dispute throughout the duration of the trial. A critical area of dispute centered on plaintiff's desire to obtain a get—a divorce recognized under Jewish religious law.[3] Before a verdict was reached in the Family Part divorce trial, the parties tentatively reached an agreement on all issues, including each party's obligations with respect to a beis din proceeding to obtain the get that plaintiff sought.

With the consent of both parties, the trial court took testimony from defendant before the final MSA was drafted to confirm his agreement with respect to the beis din provision. Defendant testified that he would respond to any summons received from the beis din and would be bound by any decision the rabbinical court made regarding the get, which was to be decided by that

---

[3] Only a husband may secure a get, and, without it, the wife cannot remarry under Jewish law.

body in accordance with Jewish law. Defendant further testified that he understood he would be subject to sanctions imposed by the Family Part in the event that he did not cooperate with the beis din in accordance with his agreement, which would be memorialized in writing and entered in the Family Part.

Thereafter, an MSA was drafted. Article IX of the MSA is titled, "Beis Din Proceedings/Get Issue." That article provides in its entirety:

> Both parties agree to respond to any summons from a [b]eis [d]in regarding the [g]et which shall be decided in accordance with Jewish [l]aw. By virtue of this agreement the parties are not waiving any religious beliefs, rights or remedies they each may have under Jewish law in the [b]eis [d]in process (except with respect to the process of identifying a choice of [b]eis [d]in by the [defendant] now, as provided in the next to last sentence of this paragraph). The parties have freely and voluntarily entered into the custodial and financial terms of their legal settlement. Neither party shall seek to alter any provisions of the custody and financial aspects of their legal settlement before the [b]eis [d]in. Nothing herein, however, shall prevent either party from seeking whatever other relief that may be available to either party including damages. By way of example, neither party may seek to change a term of the agreement however, they both have the right to assert any financial claims for relief that they may have before the [b]eis [d]in. Both parties shall timely participate in the [b]eis [d]in proceeding. Both parties will answer any summons in a prompt manner. [Defendant] represents that he may be opposing the [plaintiff]'s request for a [g]et. The parties agree that their submission to the [b]eis [d]in shall constitute an agreement to be bound by the [b]eis [d]in [d]ecision

on any issue the [b]eis [d]in addresses, and the [b]eis [d]in shall have the authority to order monetary awards relating to the Jewish law matters before it, which awards may be confirmed in a court of law. Both parties shall participate in this process freely and voluntarily. Both parties shall abide by the recommendations of the [b]eis [d]in. Any violation of this section will result in sanctions to be ordered by the court, including but not limited to monetary sanctions, arrest and the [parties] shall be permitted to seek any relief available to her/him in the [c]ourt with regard to this issue. The [defendant] agrees that he has freely and voluntarily chosen to select as a [b]eis [d]in for this process, which selection he makes shall be at his sole option, which will be either the Rabbinical Court of New City or Mechon Lihoyra'ah. This paragraph was an essential term of this Agreement, without which this term sheet would not have been agreed upon.

The MSA was signed by the parties on October 6, 2020. On that date, the final judgment of divorce was entered. Also on that date, both parties appeared before the trial court and testified as to their understanding of the MSA. They both confirmed their agreement to be bound by its terms.

Defendant specifically testified that he was not coerced into signing the MSA and that he believed it to be fair and reasonable under the circumstances. During that testimony, defendant was again questioned about the get/beis din provisions in the MSA. He testified that he agreed to those provisions being included in the MSA, he was not forced or coerced to include them in the MSA, and he agreed to sign the MSA with those provisions in order to resolve

the divorce litigation. Defendant further testified that he would timely cooperate with the beis din proceedings, comply with and respond to any summons or subpoena issued to him by the beis din, and abide by the recommendations of the beis din. He also acknowledged that if he did not cooperate or comply, he would be subject to sanctions by the Family Part.

The court was thereafter advised at a case management conference that defendant had not complied with his obligations under the MSA. The trial court entered a case management order dated December 6, 2021. Paragraph six of that order states that "[d]efendant Allen Satz shall participate in the [b]eis [d]in proceedings pursuant to Article IX of the [p]arties' MSA." At the December 6, 2021 hearing, the trial court explained:

> When parties agree to do certain things and the [c]ourt makes a determination that the agreement in and of itself should not be void because it was not unjust, then . . . we enforce.
>
> I don't re-write agreements; I enforce them as long as they're not found to be unjust and unfair and unreasonable. And when I read the MSA there's nothing unreasonable, unfair, or unjust about what the agreement says.
>
> The [beis din] issue is still up in the air. It hasn't been resolved. It needs to be resolved because a determination has yet to be made. And I have a party that's seeking enforcement.
>
> Now you may disagree on how it happened and what was said, okay, but that's separate and distinct

from ["]you need to go and participate in the process.["]

On January 25, 2022, plaintiff moved for enforcement. Defendant cross-moved, seeking the denial of plaintiff's application and a stay of any order enforcing Article IX of the MSA. Defendant also opposed the issuance of any sanctions against him, including a fee award to plaintiff.

The trial court heard those motions on March 25, 2022, at which time it denied defendant's application for a stay of the December 6, 2021 order, granted plaintiff's request that defendant be obligated to "participate in the [b]eis [d]in proceedings pursuant to Article IX of the parties' MSA," and ordered both parties to actively participate in the beis din proceedings by May 31, 2022. Regarding counsel fees, the court noted that a moving party may request an award of counsel fees pursuant to Rule 4:42-9, Rule 5:3-5, and Rule of Professional Conduct (RPC) 1.5(a) and recognized that it had received certifications of services. In determining the amount of the fee award, the court considered the factors set forth in Rule 5:3-5(c), including the parties' financial circumstances and any bad faith. The court found defendant had acted in bad faith in moving for a stay of the court's enforcement order and by not complying with the court's previous orders regarding his participation in the beis din proceedings. The trial court granted plaintiff's motion for counsel fees related to the enforcement of the court's prior orders.

On April 5, 2022, defendant filed a notice of motion for leave to appeal certain paragraphs of the March 25, 2022 order. On May 31, 2022, defendant's motion for leave to appeal was denied.

On May 30, 2022—before learning of the denial of his motion for leave to appeal the March 25, 2022 order—defendant sought to file a notice of appeal from two paragraphs of an order dated June 30, 2021. That notice of appeal was rejected by the Appellate Division Clerk's Office as untimely.

On June 8, 2022, defendant filed a notice of appeal challenging various paragraphs of trial court orders dated October 20, 2021, December 6, 2021, and March 25, 2022.

On June 28, 2022, defendant filed a third notice of appeal from certain paragraphs of orders dated June 25, 2021—which was later amended and replaced by the June 30, 2021 order—and May 27, 2022.

On July 18, 2022, defendant filed a fourth notice of appeal from certain paragraphs of orders dated October 20, 2021, December 6, 2021, March 25, 2022, and May 27, 2022.

We note that a beis din hearing occurred on May 11, 2022. On July 6, 2022, the beis din issued a fifteen-page ruling finding that defendant had not properly responded to summonses from rabbinical courts, that defendant is "obligated to divorce [plaintiff] forthright and immediately," and that his

refusal to provide plaintiff a get "is a form of abuse." It noted defendant had been summoned to arbitration before numerous rabbinical courts and had "been deemed like he is refusing to appear." The decision explained that defendant had signed an arbitration agreement in which he agreed to a hearing and to accept the beis din's rules and procedures, allowing the rabbinical court to arbitrate in his absence. The decision also sets forth sanctions that can be assessed for his failure to comply with the ruling.

Defendant raises several arguments on appeal in his initial and reply briefs. He first argues that his appeal is timely and not interlocutory as plaintiff contends. Second, he argues that the trial court should not have sanctioned him for filing his stay motion and abused its discretion in awarding counsel fees to plaintiff. Defendant's remaining arguments pertain to the legitimacy of the trial court's enforcement of the MSA. He argues: the trial court had no authority to order him to arbitrate in the beis din; the trial court erred by relying on a "religious document" and by requiring defendant's participation in beis din proceedings; and the trial court violated the First Amendment by ruling on a religious agreement.

II.

We first address plaintiff's contention that defendant's appeal should be dismissed on procedural grounds because it was untimely filed, includes

9                                                                          A-3535-21

interlocutory orders, and fails to appeal from the final order entered on the issues.

Plaintiff is correct that litigants do not have a right to appeal an interlocutory order. See R. 2:2-3. Rather, leave to appeal an interlocutory order is granted only "in the interest of justice." R. 2:2-4. As a general rule, "[i]nterlocutory appellate review runs counter to a judicial policy that favors an 'uninterrupted proceeding at the trial level with a single and complete review.'" State v. Reldan, 100 N.J. 187, 205 (1985) (quoting In re Pa. R.R. Co., 20 N.J. 398, 404 (1956)). There is a "general policy against piecemeal review of trial-level proceedings." Brundage v. Est. of Carambio, 195 N.J. 575, 599 (2008).

In this instance, however, we deem it to be in the interests of justice—and judicial economy—to address and definitively resolve defendant's contentions related to the enforcement of Article IX of the MSA. We therefore elect to consider the merits of those contentions in this opinion.

III.

The scope of our review is narrow. Cesare v. Cesare, 154 N.J. 394, 412 (1998). Reviewing courts "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at

10

412).  Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence."  Cesare, 154 N.J. at 411–12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  Courts will not disturb the factual findings and legal conclusions that flow from them unless convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)).

We also "accord great deference to discretionary decisions of Family Part judges."  Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009)).  "Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred."  Ricci, 448 N.J. Super. at 564 (citing Gac v. Gac, 186 N.J. 535, 547 (2006)).  An abuse of discretion occurs when a trial court makes "findings inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," or "fail[s] to consider controlling legal principles."  Elrom, 439 N.J. Super. at 434 (internal citations omitted).  An abuse of discretion can also be found if the court "fails to take into consideration all relevant factors[,] and

when its decision reflects a clear error in judgment." State v. C.W., 449 N.J. Super. 231, 255 (App. Div. 2017) (quoting State v. Baynes, 148 N.J. 434, 444 (1997)).

Reviewing courts do not accord special deference to the Family Part's interpretation of the law, D.W. v. R.W., 212 N.J. 232, 245 (2012), and review legal determinations de novo, Ricci, 448 N.J. Super. at 565.

Turning to substantive legal principles that guide and inform our analysis, "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citing Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). "Indeed, there is a 'strong public policy favoring stability of arrangements in matrimonial matters.'" Ibid. (quoting Konzelman, 158 N.J. at 193). Our Supreme Court has "observed that it is 'shortsighted and unwise for courts to reject out of hand consensual solutions to vexatious personal matrimonial problems that have been advanced by the parties themselves.'" Ibid. (quoting Konzelman, 158 N.J. at 193). "Therefore, 'fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.'" Ibid. (quoting Konzelman, 158 N.J. at 193–94). Our Supreme Court has also instructed that "a court should not rewrite a contract or grant a better deal than

that for which the parties expressly bargained." Id. at 45 (citing Solondz v. Kornmehl, 317 N.J. Super. 16, 21–22 (App. Div. 1998)).

Matrimonial settlement agreements are governed by basic contract principles and, as such, courts should discern and implement the parties' intentions. J.B. v. W.B., 215 N.J. 305, 326 (2013). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn, 225 N.J. at 45 (citing J.B., 215 N.J. at 326). "An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute." Ibid. The task of the court, then, is to "discern and implement 'the common intention of the parties[,]' and 'enforce [the mutual agreement] as written.'" Id. at 46 (first quoting Tessmar v. Grosner, 23 N.J. 193, 201 (1957); and then quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)).

"Marital agreements are essentially consensual and voluntary[,] and as a result, they are approached with a predisposition in favor of their validity and enforceability." Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995) (citing Petersen v. Petersen, 85 N.J. 638, 642 (1981)). Accordingly, MSAs should be enforced so long as they are consensual, voluntary, conscionable, and not the result of fraud or overreaching. Weishaus v. Weishaus, 180 N.J. 131, 143–44 (2004). However, if an MSA was wholly unconscionable when

13

made, the agreement may be set aside. <u>Guglielmo v. Guglielmo</u>, 253 N.J. Super. 531, 541 (App. Div. 1992). Before any settlement agreement will be vacated, the moving party must demonstrate proof of fraud or other compelling circumstances by "clear and convincing evidence." <u>Nolan v. Lee Ho</u>, 120 N.J. 465, 472 (1990).

IV.

We agree with the trial court that nothing in the MSA is unconscionable or contrary to public policy as to render it unenforceable. As the trial court aptly found, the parties entered into a comprehensive agreement to resolve their contentious marital dispute. Both sides made concessions as consideration for the benefit of resolving the divorce litigation. Both parties were represented by counsel. The MSA, moreover, was carefully drafted after extensive negotiation. Revisions to the initial draft were exchanged. The parties ultimately agreed to and executed the MSA, and both testified they had entered into it voluntarily and free from coercion or duress. On two separate occasions, defendant testified under oath regarding the obligations he agreed to with respect to the <u>beis din</u> proceedings. This was done with full awareness that obtaining a <u>get</u> was extremely important to plaintiff because, absent a <u>get</u>, she would continue to be viewed as married under Jewish law, thereby preventing her from remarrying within her faith.

14

We are satisfied on this record the MSA is a legally binding contract based on ample consideration from both parties and entered into knowingly and voluntarily. The Family Part judge—who was intimately familiar with this protracted litigation and the litigants—thus had the lawful authority to enforce the agreement as written.

Defendant argues that he agreed in the MSA only to "respond to a summons" issued by the beis din, not to participate in its proceedings. He claims that he complied with his contractual obligations under the MSA when he responded to a beis din summons by asserting that the beis din had no jurisdiction over him. We reject that argument and agree with the trial court that defendant agreed to participate in the beis din proceedings. Importantly, the MSA provision specifically states that "[b]oth parties shall timely participate in the [b]eis [d]in proceeding" and "[t]he parties agree that their submission to the [b]eis [d]in shall constitute an agreement to be bound by the [b]eis [d]in [d]ecision on any issue the [b]eis [d]in addresses." The clear import of the plain language of the MSA is that defendant agreed to submit to the jurisdiction of the beis din and to accept its judgment.

V.

We turn next to defendant's argument that the trial court violated his First Amendment rights by ordering him to participate in beis din proceedings

A-3535-21

and to sign an arbitration agreement with the beis din. The First Amendment's Establishment Clause bars a state from placing its support behind a religious belief, while the Free Exercise Clause bars a state from interfering with the practice of religion. U.S. Const. amend. I. It is a fundamental principle that civil courts may not become entangled in religious proceedings.

Our trial courts have not been in complete accord on the issue of whether a civil court has authority to enforce a ketubah—a Jewish marriage contract. Mayer-Kolker v. Kolker, 359 N.J. Super. 98, 100–03 (App. Div. 2003). Compare Minkin v. Minkin, 180 N.J. Super. 260 (Ch. Div. 1981), and Burns v. Burns, 223 N.J. Super. 219 (Ch. Div. 1987), with Aflalo v. Aflalo, 295 N.J. Super. 527 (Ch. Div. 1996). In this case, however, the trial court was asked to enforce a civil contract, not a religious one. Nor did the trial court substantively review or affirm the beis din ruling. For purposes of this appeal, the beis din ruling is essentially a report confirming plaintiff's assertion that defendant failed to participate in the beis din proceeding in violation of his obligations under the MSA.

As our Supreme Court has recognized, "civil courts may resolve controversies involving religious groups if resolution can be achieved by reference to neutral principles of law, but that they may not resolve such controversies if resolution requires the interpretation of religious doctrine."

16

Ran-Dav's Cnty. Kosher v. State, 129 N.J. 141, 162 (1992).  The Court specifically noted that "[n]eutral principles may be particularly suited for adjudications of . . . civil contract actions," so long as the dispute does not "involve interpretations of religious doctrine itself."  Ibid.

Defendant agreed in the MSA to abide by the beis din ruling, whatever that might be.  In enforcing that agreement, the trial court in no way interpreted religious doctrine.  The orders entered in this case scrupulously avoid entanglement with religion because the trial court applied well-established principles of civil contract law, not rabbinical law.  The latter body of law remained solely within the province of the beis din and was not interpreted or applied by the Family Part judge, nor by us.

The United States Supreme Court has recognized that the Establishment Clause is violated where there is clearly no secular purpose for the state action being challenged and the "activity was motivated wholly by religious considerations."  Lynch v. Donnelly, 465 U.S. 668, 680 (1984).  In this instance, the orders defendant challenges served the secular purpose of enforcing the parties' contractual obligations under the MSA, which in turn serves the secular purpose of encouraging divorce litigants to resolve their disputes by negotiating and entering an MSA.  Accordingly, the trial court did not violate defendant's constitutional rights by ordering him to fulfill his

17

contractual obligation under the MSA to sign an arbitration agreement implementing the results of the independent <u>beis din</u> proceedings.

VI.

Lastly, we address defendant's contention the trial court abused its discretion by awarding counsel fees to plaintiff. "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." <u>Barr v. Barr</u>, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting <u>Strahan v. Strahan</u>, 402 N.J. Super. 298, 317 (App. Div. 2008)).

An allowance for counsel fees is permitted following the filing of a motion in aid of litigant's rights, <u>R.</u> 1:10-3, or to any party in a divorce action, <u>R.</u> 5:3-5(c), subject to the provisions of <u>Rule</u> 4:42-9. To determine whether and to what extent such an award is appropriate, the court must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties . . . ; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [<u>R.</u> 5:3-5(c).]

All applications or motions seeking an award of attorney fees must include an affidavit of services at the time of initial filing. R. 5:3-5(c).

Specifically, "Rule 1:10-3 provides a 'means for securing relief and allow[s] for judicial discretion in fashioning relief to litigants when a party does not comply with a judgment or order.'" N. Jersey Media Grp., Inc. v. State, 451 N.J. Super. 282, 296 (App. Div. 2017) (alteration in original) (quoting In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 17–18 (2015)). "Relief under [Rule] 1:10-3, whether it be the imposition of incarceration or a sanction, is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997).

Importantly, the MSA explains when counsel fees and costs may be imposed upon breach of the agreement. Article VII, paragraph five of the MSA provides:

> In the event that either [party] is required to file an application with the [c]ourt to enforce any provision in this Agreement, the breaching party shall indemnify the non-breaching party for all reasonable counsel fees and costs that the nonbreaching party incurred and the [c]ourt shall enforce this paragraph to enter an award of reasonable counsel fees and costs. In addition, if a default by one party subjects the other party to a lawsuit by a third party, the defaulting party shall likewise be responsible for attorneys' fees and costs. The rights granted in this paragraph shall be in addition to, and without prejudice, to any other rights

19

and remedies to which the aggrieved party may be entitled.

The trial court found that defendant had acted in bad faith in failing to comply with his obligations under the MSA, which was a "compelling factor in awarding the fees." For reasons we explained in the preceding section, we reject defendant's attempt to frame the trial court's award of counsel fees as a penalty or sanction for not participating in the beis din proceeding in violation of his religious rights. The record makes clear the trial court awarded counsel fees based on defendant's noncompliance with the MSA. The record also shows the trial court reviewed the certification of services with respect to all applicable factors, see R. 5:3-5(c), and made a determination that defendant had the financial ability to pay plaintiff's fees. We have no basis upon which to overturn or modify the trial court's decision to grant plaintiff's request for counsel fees.

To the extent we have not specifically addressed them, any remaining contentions raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION