810 A.2d 93 (2002)
355 N.J. Super. 305
Houida ODATALLA, Plaintiff
v.
Zuhair ODATALLA, Defendant.
Superior Court of New Jersey, Chancery Division, Passaic County.
Decided June 24, 2002.
*94 Abed Awad, Clifton, for plaintiff.
Thomas Raimondi, Wayne, for defendant (Afflitto, Raimondi & Afflitto, attorneys).
SELSER, J.S.C.
This case presents the novel issue of whether a civil court can specifically enforce the terms of an Islamic Mahr Agreement, and arises in this action brought by plaintiff for a divorce based upon grounds of extreme cruelty. Defendant has filed an answer and a countercomplaint for divorce also on grounds of extreme cruelty. The parties had a civil ceremony of marriage on June 23, 1996.
The other issues to be decided are the requests by the defendant for alimony and *95 equitable distribution of certain jewelry, furniture, wedding gifts and marital debt. In addition, plaintiff seeks enforcement of the Mahr Agreement contained in the Islamic marriage license. The Court will first turn its attention to the specific performance request of the Mahr Agreement.
The court has had the benefit of testimonial evidence from both plaintiff and defendant. In addition, the Court had an actual copy of the Islamic marriage license, a videotape of the entire marriage ceremony and documents relating to the alimony and equitable distribution issues in this case.
Plaintiff and defendant were married in a religious ceremony on June 15, 1996 by an Islamic Imam at the home of the plaintiff's parents in Linden, New Jersey. Prior to the actual ceremony of marriage, the family of the plaintiff and the defendant negotiated the terms and conditions of a Mahr Agreement. The videotape of the entire ceremony showed the families sitting on separate couches in the living room negotiating the terms and conditions of the entire Islamic marriage license including those of the Mahr Agreement. After the negotiations, when a sum of money was determined for the Mahr Agreement, both families went to a table where the Imam began preparing the written Islamic marriage license including the Mahr Agreement. When the Islamic marriage license, including Mahr, was completed, the Imam presented it to each party for their signature. Each party read the entire license and Mahr Agreement and signed the same freely and voluntarily. The signatures were witnessed and the Imam continued performing the remaining parts of the Islamic ceremony of marriage. During the ceremony defendant handed plaintiff the one golden pound coin as called for in the Mahr Agreement.
The Mahr Agreement, a section of the Islamic marriage license in the lower left portion of the license, read:
"According to Islamic Law Dower is:
Prompt One golden pound coin
Postponed Ten Thousand U.S. Dollars
Personal conditions___"
The defendant, Zuhair Odatalla, opposes the Court ordering specific performance of the Mahr Agreement on two grounds: (1) the First Amendment to the Constitution precluding this court's authority to review the Mahr Agreement under the separation of Church and State Doctrine and (2) the agreement is not a valid contract under New Jersey law.
The Court will first consider the constitutional challenge to this Court's ability to review the Mahr Agreement and order its specific performance. The first clause of the First Amendment of the United States Constitution reads: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;..." U.S. Const. amend.1 This constitutional proscription has, over the years, been applied in various settings concerning the separation of Church and State. Why should a contract for the promise to pay money be less of a contract just because it was entered into at the time of an Islamic marriage ceremony? Defendant answers that enforcement of the Mahr Agreement would violate the spirit of the separation of Church and State clause of the First Amendment of the Constitution. Clearly, this court can enforce a contract which is not in contravention of established law or public policy.
It is this court's opinion that it can specifically enforce the terms of a Mahr Agreement provided it meets certain conditions. The first requirement is that the agreement can be enforced based upon "neutral principles of law" and not on religious *96 policy or theories. The "neutral principles of law" approach was clearly explained in Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979). The Jones case involved a dispute over the ownership of church property. A church congregation had divided into two groups and they disputed which one controlled the ownership of the church building and grounds. One of the factions took the issue of ownership to a civil court in Georgia. The other faction objected to the civil court hearing the case on the doctrinal grounds of separation of Church and State and contended that the decision should be made by the hierarchy of the Presbyterian Church of America. In deciding that the courts of Georgia had jurisdiction to hear the disputed matter, the Supreme Court set aside the First Amendment argument by indicating that this dispute could be settled by the court applying the "neutral principles of law" doctrine. Writing for a divided court, Justice Blackmun indicated, "We cannot agree, however, that the First Amendment does not require the States to adopt a rule of compulsory deference to religious authority in resolving church property disputes, even where no issue of doctrinal controversy is involved." Jones v. Wolf, supra. at 595, 605, 99 S.Ct. at 3021, 3026, 61 L.Ed.2d at 783, 786.
The court reasoned that the dispute over ownership of the church property could be determined by recourse to deeds, trust law and state statutes; thus, making the court in Georgia capable of deciding the church related property issues based upon these "neutral principles of law" and not upon religious beliefs or policies. Id.
A logical extension of this principle is applicable to the enforcement of a Mahr Agreement contained within an Islamic marriage license at the time of the marriage ceremony. As in Jones, supra, no doctrinal issue is involvedhence, no constitutional infringement. In order for laws, indeed, constitutional principles, to endure, they must be flexible in their application to the facts of the case presented. The community we live in today is vastly different from the community of the late 1700's when our Constitution was drafted by the founding fathers. At that time, our founding fathers were concerned with a state sponsored church such as existed in many European communities that they had sought to escape when they came to this country. Today's community is not as concerned with issues of a state sponsored church. Rather, the challenge faced by our courts today is in keeping abreast of the evolution of our community from a mostly homogenous group of religiously and ethnically similar members to today's diverse community. The United States has experienced a significant immigration of diverse people from Japan, China, Korea, the Middle East, and South America of various religious beliefs. Can our constitutional principles keep abreast of these changes in the fabric of our community? In writing of the Constitution, Justice William Brennan said it best:
We look to the history of the time of framing and to the intervening history of interpretation. But the ultimate question must be: what do the words of the text mean in our time? For the genius of the constitution rests not in any static meaning it may have had in a world that is dead and gone, but in the adaptability of its great principles to cope with current problems and current needs.
[William J. Brennan, Jr., The Constitution of the United States: Contemporary Ratification, 27 S. TEX. L. REV. 433, 433-35 (1986) ]
Furthermore, the Mahr Agreement is not void simply because it was entered into during an Islamic ceremony of marriage. *97 Rather, enforcement of the secular parts of a written agreement is consistent with the constitutional mandate for a "free exercise" of religious beliefs, no matter how diverse they may be. If this Court can apply "neutral principles of law" to the enforcement of a Mahr Agreement, though religious in appearance, then the Mahr Agreement survives any constitutional implications. Enforcement of this Agreement will not violate the First Amendment proscriptions on the establishment of a church or the free exercise of religion in this country. "The primary advantages of the neutral principles approach are that it is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity." Jones v. Wolf, supra, at 603, 99 S.Ct. at 3025, 61 L.Ed.2d at 784, 785.
This principle has been applied in other jurisdictions. In New York, the court specifically enforced a Ketubah, a marriage contract in the Jewish faith, Hurwitz v. Hurwitz, 216 A.D. 362, 215 N.Y.S. 184 (1926). In a well written decision in Avitzur v. Avitzur, 58 N.Y.2d 108, 459 N.Y.S.2d 572, 446 N.E.2d 136 (1983), Justice Wachtler used the "neutral principles of law" approach to order the specific performance of a Ketubah. Similarly Judge Minuskin ruled that the Superior Court of New Jersey had the power to specifically enforce a Ketubah, as it related to the husband securing a Jewish "Get" as provided for in the Ketubah. Minkin v. Minkin, 180 N.J.Super. 260, 434 A.2d 665 (Ch.Div.1981).
Once the Court has determined that the controversy can be resolved by recourse to "neutral principles of law", the second requirement, in order to specifically enforce the Mahr Agreement, is the actual application of those "neutral principles of law." In this case, principles of contract law are to be applied to the Mahr Agreement in question. The defendant contends that the Agreement does not meet the requirements of New Jersey's contract law. It is basic contract law that "a contract is a set of promises for the breach of which the law gives a remedy, or performance of which the law in some way recognizes as a duty." Reinstatement (Second) of Contracts § 1 (1979).
Simply stated, "In a word, a contract is a voluntary obligation proceeding from a common intention arising from an offer and acceptance." Johnson and Johnson v. Charmley Drug Co., 11 N.J. 526, 539, 95 A.2d 391 (1953). Here, the videotape in evidence showed the defendant signing the Islamic marriage license, including the Mahr Agreement of $10,000, freely and voluntarily thus making an offer to the plaintiff. Also the tape showed the plaintiff signing this same Agreement with the same terms, and thus making an acceptance of the offer, i.e., a contract. Additionally, the videotape shows Mr. Odatalla making the symbolic first payment of the Mahr Agreement, one gold coin, thus, confirming his intention to be bound by the Mahr Agreement.
The question remains whether the balance of the Mahr Agreement, $10,000, is still due the plaintiff. The Mahr Agreement simply used the term "postponed" concerning the balance of the funds due under the Mahr Agreement. Plaintiff offered testimonial evidence that the "postponed" portion of the Mahr Agreement is similar to a promissory demand note; that is, that sum could be demanded by her and would be payable by her husband at any time she so demands. She further offered testimony that by Islamic custom, the demand for payment of the Mahr Agreement is usually not made unless there is *98 the death of the husband or a divorce action.
The defendant took the position that the Mahr Agreement is too vague to comply with contract law. It was his position that the "postponed" did not sufficiently define when the $10,000 would be due to his wife. The parol evidence rule of contract law stands for the principle that parol evidence cannot be introduced to create, vary or contradict a term of a contract not otherwise present in the written agreement. However, parol evidence can be introduced to interpret the meaning of the written words of the contract.
The `parol evidence rule' purports to exclude testimony `only when it is offered for the purpose of `varying or contradicting' the terms of an `integrated' contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms. The terms of any contract must be given a meaning by interpretation before it can be determined whether an attempt is being made to `vary or contradict' them.
[Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302, 96 A.2d 652 (1953)]
This Court finds that all of the essential elements of a contract are present. Thus, this Court rules that the defendant owes to the plaintiff the sum of $10,000.
Agreements, though arrived at as part of a religious ceremony of any particular faith, are capable of being enforced if they meet the two prong test of (1) being capable of specific performance under "neutral principles of law" and (2) once those "neutral principles of law" are applied, the agreement in question meets the state's standards for those "neutral principles of law".
The defendant further challenges the Mahr Agreement indicating that it is a gift and does not meet the essential elements of a gift. See Jennings v. Cutler, 288 N.J.Super. 553, 672 A.2d 1215 (App.Div.1996). Having found that this Mahr Agreement is a valid contract, the court does not have to reach the issue of whether it is a gift. Further, the defendant argues that the Agreement is unenforceable and void as being against public policy.
An agreement is against public policy if it is injurious to the interest of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or, as it is sometimes put, if it is at war with the interests of society and is in conflict with public morals.
[Garlinger v. Garlinger, 129 N.J.Super. 37, 40, 322 A.2d 190 (Ch.Div.1974) ]
Clearly, the Mahr Agreement in the case at bar is nothing more and nothing less than a simple contract between two consenting adults. It does not contravene any statute or interests of society. Rather, the Mahr Agreement continues a custom and tradition that is unique to a certain segment of our current society and is not at war with any public morals.
The portions of the opinion concerning other issues of alimony and equitable distribution are not included, as they do not meet the guidelines for publication. R. 1:36-2(d).
Plaintiff and defendant both gave sufficient testimony so that a Dual Judgment of Divorce will be granted on the grounds stated in the Complaint and Countercomplaint respectively, including provisions for the enforcement of the Mahr Agreement and the equitable distribution and alimony dispositions.