819 A.2d 17 (2003)
359 N.J. Super. 98
Isabelle MAYER-KOLKER, Plaintiff-Appellant,
v.
Ron KOLKER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 2003.
Decided March 28, 2003.
*18 Stephen H. Roth, Hackensack, argued the cause for appellant (Mr. Roth and Michelle M. DeSantis, on the briefs).
Dale C. Krouse argued the cause for respondent.
Before Judges STERN, COLLESTER and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
This is an accelerated appeal in which plaintiff appeals from portions of the Dual Final Judgment of Divorce entered March 20, 2002.[1]
On August 9, 1996, plaintiff and defendant were married in a religious ceremony in Passaic, New Jersey. For both plaintiff (then 38) and defendant (then 41), this was their second marriage. Plaintiff has one daughter from a previous marriage, but the parties had no children from this marriage and as a result no disputes exist as to custody or child support. The disputes on appeal include whether defendant could be compelled to cooperate in giving plaintiff a get.
At the time of their marriage, the parties entered into a ketubah, a premarital document that within the Jewish tradition appears to have characteristics of a binding contract, at least in certain respects. Indeed, plaintiff alleges that the very act of executing a ketubah made their marriage subject to Mosaic law and obligated defendant to give her a get. According to defendant, however, the particular ketubah the parties signed did not have the effect of promising compliance with Mosaic law, lacked the requisite specificity for enforcement, and is silent on the issue of whether a get would be granted in the event of a divorce.
[At the court's direction, a preliminary discussion appearing at this point in the filed opinion has been omitted from the published opinion.]
Plaintiff requested that the court compel defendant to cooperate with those efforts. As we understand it, a husband must secure a release in order for his former wife to be free to remarry under Mosaic law. Minkin v. Minkin, 180 N.J.Super. 260, 261-62 & n. 1, 434 A.2d 665 (Ch.Div.1981), citing 6 Encyclopedia Judaica 132 (1971). The trial judge determined, "I'd like to *19 order a get and see that [plaintiff is] free to remarry in [her] faith, however, I do not believe that I have the authority to do that." The judge based his decision on the reasoning in Aflalo v. Aflalo, 295 N.J.Super. 527, 685 A.2d 523 (Ch. Div.1996).
Our trial courts have not been in complete accord on the issue of whether a civil court has authority to compel a husband to cooperate in obtaining a get. Minkin determined that, by signing a ketubah, the parties "agreed to conform to the provisions of the laws of Moses and Israel." Supra, at 262, 434 A.2d 665. Because in Minkin the parties' entry into the ketubah had been voluntary, and because the court found the ketubah itself did not violate public policy, Minkin held that a court could enforce the ketubah on neutral contract principles. Id. at 262-63, 434 A.2d 665. Viewed in that light, a ketubah in a sense is a counterpart in religious law to the forum selection clauses and consents to suit that are given effect by temporal courts. See Paradise Enterprises Ltd. v. Sapir, 356 N.J.Super. 96, 811 A.2d 516 (App.Div.2002), certif. denied, 175 N.J. 549, 816 A.2d 1050 (2003), where we noted the general enforceability in New Jersey of forum selection clauses.
The court in Minkin went on to take testimony from at least five rabbis and relied upon "credible expert testimony [to find] that the acquisition of a get is not a religious act[.]" The court also found "that the entry of an order compelling defendant to secure a get would have the clear secular purpose of completing a dissolution of the marriage." Id. at 266, 434 A.2d 665. The court reasoned that compelling the husband to specifically perform the duties which he promised to undertake in the ketubah would thus not violate the Establishment Clause of the Constitution. Ibid. On facts different than those of the instant case, the court noted a ketubah required compliance with Mosaic law and that Mosaic law "require[s] the husband to give his wife a get when he alleges an act of adultery on his wife's part. In the instant case [Minkin] the husband counterclaimed for divorce on the ground of adultery, giving rise to the wife's claim to require her husband to secure a get." Id. at 262, 434 A.2d 665.
The holding in Minkin was followed in Burns v. Burns, 223 N.J.Super. 219, 224-25, 538 A.2d 438 (Ch.Div.1987). Taking judicial notice of both the Bible and Encyclopedia Judaica, Burns stated that Mosaic law required a husband to obtain a get in at least five other circumstances in addition to alleged adultery by a wife. Id. at 225-26. Burns thus expanded the holding in Minkin to hold that a civil court confronted no constitutional problem in requiring a husband to cooperate in obtaining a get in the event of a dual judgment of divorce based upon eighteen months of separation with no prospect of reconciliation, commonly referred to as a "no fault" divorce. Ibid. Burns also noted the husband could cooperate by authorizing an agent to appear before the religious body to obtain the get rather than having to appear himself. Id. at 226, 538 A.2d 438.
In the present case, the trial court relied on Aflalo, supra, 295 N.J.Super. at 532, 685 A.2d 523, which declined to follow Minkin. In concluding he had no authority[2] to compel defendant to cooperate in *20 obtaining a get, the judge in his opinion recited the following reasoning:
[Minkin] fails to recognize that coercing the husband to provide the "get" would not have the effect sought. The "get" must be phrased and formulated in strict compliance with tradition, according to the wording given in the Talmud. The precisely worded "get" states that the husband does "willingly consent, being under no restraint, to release, to set free, and put aside thee, my wife[.]" Accordingly, in giving his wife a "get" a husband must "act without constraint." Indeed, during the proceeding the husband is asked "whether he ordered [the "get"] of his own free will." What value then is a "get" when it is ordered by a civil court and when it places the husband at risk of being held in contempt should he follow his conscience and refuse to comply? Moreover, why should this court order such relief when that is something which the Beth Din will not do? If a "get" is something which can be coerced then it should be the Beth Din which does the coercing. In coercing the husband, the civil court is, in essence, overruling or superseding any judgment which the Beth Din can or will enter, contrary to accepted First Amendment principles.

[Ibid.]
Aflalo determined that the Free Exercise clause (U.S. Const. amend. I) did not allow the court authority to compel either husband or wife to appear before the religious tribunal, whether to obtain a get or to discuss reconciliation.[3]Id. at 544, 685 A.2d 523. Our research has not disclosed any New Jersey court decisions other than at the trial level as to the judicial power or lack of power to compel cooperation in obtaining a get.
Here, we conclude that we need not determine the limits of judicial authority in this field. Instead, we focus on the threshold issue, namely, whether the particular ketubah of the parties in this case had the effect of subjecting the parties to Mosaic law. The parties here did sign a ketubah, although the judge concluded there was "no such agreement[.]"[4] Indeed, the document was not before the trial court but is included in this appeal as a supplement. While we have the ketubah before us, we do not have the information necessary to make a determination about the effect of the agreement.
First, the ketubah signed by these parties is in two languages and they do not stipulate to any translation or that the English represents a translation of the Hebrew. Second, they presented no evidence about the effects of a ketubah generally or this ketubah in particular. Plaintiff contends the very act of signing a ketubah binds parties to Mosaic law. Minkin and Burns support plaintiff's contention. Minkin describes the effect of a ketubah in general, again taking judicial notice of the Encyclopedia Judaica:
Every Jewish marriage calls for the execution by the parties of an agreement called the "ketuba." The ketuba obligates the marital partners to comply with the laws of Moses and Israel. Certain rights and privileges as defined in *21 those laws are granted to the wife by the husband. The consideration in the contract is the giving by the wife of her dowry and the husband obligating himself to support and care for his wife during the marriage and to comply with the laws of Moses and Israel.

[Supra, at 262 n. 2, 434 A.2d 665.]
Unfortunately, the operative language of the Minkin ketubah is not provided. Defendant counters, "it was not the type of Ketubah that addressed in any way what would happen in the event of a civil divorce, nor did it in any way obligate either party to cooperate with the other to obtain a get."
Third, the parties do not present competent evidence, which we assume would consist of appropriate expert testimony, about what Mosaic law would require in this instance. Even if a civil court may properly enforce such religious premarital agreements, notwithstanding First Amendment concerns, we are not competent to determine without an evidentiary basis whether this ketubah effectively subjected defendant to comply with religious law and what that religious law demands here. Interpreting the effect of this ketubah, and then determining whether defendant's signature of this document subjects him to Mosaic law, and further determining what Mosaic law commands on this point are not tasks which we should assume in the first instance and in any event are not tasks for which we are properly suited in the absence of expert testimony and other evidence. See Hernandez v. C.I.R., 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766, 786 (1989) (determining that fees for Scientology audits were not deductible from federal income tax as "charitable contributions," the Court stated, "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds[ ]"); and Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 449, 89 S.Ct. 601, 606, 21 L.Ed.2d 658, 665 (1969) (refusing to decide whether a local church has failed to follow tenets of a denomination, stating:
First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern .... the Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine.).
See also Ran-Dav's County Kosher, Inc. v. New Jersey, 129 N.J. 141, 608 A.2d 1353 (1992) (determining that state regulatory scheme for kosher foods presented entanglement problems under the Establishment Clause).
The trial court's determination that it should not compel defendant in regard to the get is correct, but for different reasons than those advanced. Plaintiff has not established the effect of this particular ketubah nor the mandate of Mosaic law, if applicable. Without such a record we lack the necessary factual context to determine whether a New Jersey court has power to compel cooperation in obtaining a get.
[At the court's direction, its discussion of other facts and of the parties' other arguments has been omitted from the published opinion.]
Accordingly, the judgment and orders appealed from are affirmed in all respects, *22 except that we remand for the development of a more complete record as to the parties' obligations under Mosaic law in the circumstances of this case, including the ketubah and for a determination in light of such facts as to whether the court can compel defendant to cooperate with plaintiff in obtaining a get.
The judgment appealed from is affirmed except as specified above.
NOTES
[1] We have abbreviated this opinion for publication purposes, having deleted those portions that are of particular interest to the litigants only.
[2] We note an indication that the trial judge may since have changed his mind, in a reported opinion in which he favorably cited Minkin for the proposition that the Superior Court has authority to enforce a ketubah in support of his conclusion that he had authority to enforce an Islamic Mahr agreement by compelling a husband to pay the remainder of the $10,000 which he had promised at the time of marriage to pay his wife. Odatalla v. Odatalla, 355 N.J.Super. 305, 311, 810 A.2d 93 (Ch. Div.2002). It appears Odatalla was pending at the time of this case.
[3] In Aflalo, the wife asked the court to compel her husband to appear before the tribunal to obtain a get, while the husband asked the court to compel his wife to appear before the tribunal to work toward reconciliation. Ibid.
[4] Before reviewing the case law, the trial judge stated, "I can specifically enforce that portion of the ketubah requiring a get. What I am not aware of is that if there is no agreement, there's no ketubah ... that I can now order someone to participate in a get."