T.C. Summary Opinion 2006-122


UNITED STATES TAX COURT


ROCKE RICHARD LABOZETTA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21111-04S.                   Filed July 31, 2006.


Rocke Richard LaBozetta, pro se.

<u>Brian Bilheimer</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a $6,589 deficiency in petitioner's 2002 Federal income tax. The sole issue before this Court is whether petitioner may deduct $23,400 as alimony paid to his ex-wife in taxable year 2002.

## Background

Some of the facts have been stipulated and are so found. At the time that the petition was filed, petitioner resided in Clifton, New Jersey.

Petitioner married Karen LaBozetta (Ms. LaBozetta) on April 3, 1993. One child was born of the marriage. The couple separated in 2001, and divorce proceedings were initiated in the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County. The marriage was terminated by decree of divorce dated May 9, 2002.

Included among the stipulated exhibits for this case is a copy of the Final Dual Judgment of Divorce, along with a copy of its underlying Property Settlement agreement (agreement). Relevant provisions of the agreement provide: (1) That the parties expressly bargained for a waiver of alimony from one another; (2) that petitioner owed Ms. LaBozetta $23,400 and; (3) that Ms. LaBozetta would pay petitioner $29,746 in a buyout arrangement for the couple's marital home.

As part of the agreement, the parties detailed how Ms. LaBozetta would buy out petitioner's share of equity in the

marital home, a sum approximating $73,000. Since Ms. LaBozetta's annual household income precluded her from qualifying for a mortgage for the remaining postbuyout balance on the home, the parties further agreed that the amount of buyout equity owed to petitioner would be reduced by 20 percent of Ms. LaBozetta's share in petitioner's pension, or $19,854. The agreement also provided that petitioner would owe Ms. LaBozetta $23,400 (with the parties waiving an actual payment of that amount) to further reduce the amount of equity owed to petitioner. Petitioner contends that the $23,400 was actually paid as alimony to Ms. LaBozetta, and accordingly, should be deductible.

On August 9, 2002, Ms. LaBozetta drafted a check to petitioner for $29,746.[1] Petitioner cashed the check on August 12, 2002, at Fleet Bank in Ridgefield Park, New Jersey.

On April 15, 2003, petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for 2003 on which he claimed a deduction of $23,400 for alimony paid to Ms. LaBozetta. Respondent issued a notice of deficiency disallowing petitioner's deduction.

---

[1] The $29,746 is computed as follows:

| | |
|---|---|
| Petitioner's equity in the marital home: | $73,000 |
| Ex-wife's share of petitioner's pension | (19,854) |
| Petitioner's waiver of buyout equity | (23,400) |
| Balance to petitioner by check | 29,746 |

## Discussion

The parties dispute whether petitioner can claim a deduction of $23,400 for alimony paid to Ms. LaBozetta. At trial, petitioner maintained that the $23,400 at issue qualified as alimony on the basis of these factors: The presence of contradictory language in an earlier draft of the agreement calling for alimony to be paid to Ms. LaBozetta; petitioner's belief that the $23,400 "payment" on May 9, 2002 (the date of the agreement), was, in fact, alimony; and that the word "alimony" was stricken from the copy of the agreement immediately before its signing on the basis of an understanding between petitioner and Ms. LaBozetta that the $23,400 at issue would stand in the place of their previous agreement regarding alimony.

A. Settlement Agreement

Although petitioner conceded at trial that the agreement was a final document, he nonetheless maintains that this Court should reject the contract as written and, in the alternative, consider evidence regarding prior events, including petitioner's belief that at the time the agreement was signed, the $23,400 at issue was, in fact, alimony. Petitioner disputes the contractual terms of the New Jersey Final Dual Judgment of Divorce and the agreement, and accordingly, we must first examine the terms and tenor of that contract.

Among the relevant provisions of the agreement, paragraph 5 ("Mutual Release") states: "the provisions of this agreement * * * release and discharge * * * [each party] from all causes of action, claims, rights, or demands whatsoever, in law or equity, which either of the parties ever had or now has against the other."  Moreover, paragraph 8 ("Alimony") reads: "In exchange for the mutual promises contained within, each party forever waives alimony from the other."  Lastly, and perhaps most significant to this discussion, paragraph 10(A)(b) ("Equitable Distribution") states:

> For the mutual promises contained herein, including those involving equitable distribution and any other claims the parties may have against the other, the parties acknowledge that Husband would owe Wife the sum of $23,400, which Wife expressly waives herein, thus further buying down an additional $23,400 of the $73,000 owed to Husband.

Notably, the phrase "any other claims the parties may have against the other" was inserted after "and" in the preceding quotation on the date that the agreement was signed, and was initialed by both parties.

It is clear that the Agreement controls and not, as petitioner asserts, previous drafts of that document, or the intent of the parties at the time the agreement was signed. According to the parol evidence rule of contract law, parol (oral) evidence "cannot be introduced to create, vary or contradict a term of a contract <u>not otherwise present</u> in the

written agreement." Odatalla v. Odatalla, 810 A.2d 93, 98 (N.J. Super. Ct. Ch. Div. 2002) (emphasis added). The parol evidence rule will exclude testimony only when it is "'offered for the purpose of "varying or contradicting" the terms of an "integrated" contract'". Id. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 96 A.2d 652, 656 (N.J. 1953).

The terms of the agreement are clear; in the agreement, the parties expressly waived alimony, as well as any legal claims that the parties might have, or ever had, against each other. The agreement does not indicate that petitioner would waive $23,400 of equity owed under the marital home buyout in lieu of an alimony obligation. Although the parol evidence rule will allow extrinsic evidence to "interpret the meaning of the written words of [a] contract", if petitioner's reasoning were followed, application of the rule would require that we interpret the clause "any and all claims" (par. 10(A)(b)) to mean "alimony", an obligation that has already been expressly waived elsewhere in the agreement. Id. This interpretation would cause an inconsistency unwarranted by the facts of this case.

While we find persuasive petitioner's argument that he would not have waived the $23,400 but for the benefit of an alimony deduction, we also note his admission that he ultimately wished to do whatever he could to ensure that their child remained with her mother in the marital home. Taken together, the inconsistent

outcome that would result were we to interpret the terms of the agreement to include alimony, and petitioner's testimony about his wishes regarding the marital home, adequately establish that the agreement cannot be interpreted to prove an alimony obligation.

In summary, we find the agreement clear, controlling, and an exclusive statement of all of the terms of the parties' settlement. Accordingly, we will not consider any extrinsic negotiations, notations, or side agreements which may have existed between petitioner and Ms. LaBozetta.

B. <u>Waiver of Buyout Equity</u>

We next turn to the agreement itself and specifically, whether petitioner's reduction in the amount of equity owed to him by Ms. LaBozetta might qualify as a deductible alimony payment pursuant to section 71(b). Payments pursuant to a property settlement (such as the agreement) are generally not deductible for tax purposes from the income of the paying spouse. <u>Yoakum v. Commissioner</u>, 82 T.C. 128, 134 (1984) (and cases cited threat). Under section 215, a deduction is allowed for an amount equal to alimony or separate maintenance payments paid during the taxable year. "[A]limony or separate maintenance payment" means any alimony or separate maintenance payment that is included in the gross income of the recipient under section 71. Sec. 215(b).

Section 71(b)(1) defines "alimony or separate maintenance payment" as any payment in cash if--

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

In order to qualify for an alimony deduction, petitioner must first show that the $23,400 at issue was a "payment in cash". Sec. 71(b)(1). The temporary regulations promulgated under section 71(b) specify that in order for a cash payment to qualify as alimony, an actual payment by either cash, check, or money order must occur. Sec. 1.71-1T(b), Q&A-5, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).[2] At trial, petitioner testified that he did not remit the $23,400 at issue in cash, check, or money order but rather waived that amount from the total $73,000 of buyout equity owed for his share of the

---

[2] Temporary regulations are entitled to the same weight as final regulations. See Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996).

marital home.  As no cash payment in accordance with section 71(b) was made, we find this waiver to be no more than a transfer incident to a divorce agreement and not alimony for which petitioner is entitled to a deduction.  Accordingly, as the agreement expressly waived alimony for both petitioner and Ms. LaBozetta, and as there has been no payment in cash as provided under section 1.71-1T(b), Q&A-5, Temporary Income Tax Regs., supra, we sustain respondent's determined deficiency.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.