*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ADEL SEIFEDDINE,

      Plaintiff-Appellant,

v

BATOUL JABER,

      Defendant-Appellee.

FOR PUBLICATION
April 16, 2019
9:05 a.m.

No. 343411
Wayne Circuit Court
Family Division
LC No. 16-113901-DM

Before: LETICA, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right a judgment of divorce. On appeal, plaintiff presents arguments challenging the trial court's enforcement of a provision in the parties' Islamic marriage certificate requiring plaintiff to pay $50,000 to defendant and challenging the trial court's property distribution analysis. We affirm.

Plaintiff makes several arguments challenging whether the trial court applied neutral principles of law in determining that the mahr[1] provision in the parties' Islamic marriage certificate constituted a contract requiring plaintiff to pay $50,000 to defendant. Plaintiff's arguments are devoid of merit.

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). Issues of constitutional law are likewise reviewed de novo. *Winkler v Marist Fathers of Detroit, Inc*, 500 Mich 327, 333; 901 NW2d 566 (2017). In a divorce case, this Court reviews the trial court's factual findings for clear error. *McNamara v Horner (After Remand)*, 255 Mich App 667, 669; 662 NW2d 436 (2003). "A finding is clearly erroneous if, after a review of the entire record, the

---

[1] In the Islamic faith, a mahr is "[a] gift of money or property that must be made by a man to the woman he marries." *Black's Law Dictionary* (10th ed).

reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. "This Court gives special deference to a trial court's findings when they are based on the credibility of a witness." *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997).

The First Amendment of the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" US Const, Am I. The First Amendment applies to the states through the Fourteenth Amendment. *Winkler*, 500 Mich at 337 n 4. Civil courts may not decide religious doctrinal matters. See *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979); *Winkler*, 500 Mich at 337-338. But the United States Supreme Court has held that, in the context of resolving a church property dispute, a civil court may review religious documents if the court is applying neutral principles of law. See *Jones*, 443 US at 602-604. By applying neutral principles of law, civil courts avoid "entanglement in questions of religious doctrine, polity, and practice." *Id*. at 603. Therefore, when examining a religious document, "a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts . . . ." *Id*. at 604.

Relying on *Jones*, appellate courts in other states have persuasively concluded that religious marital agreements may be examined when a court applies neutral principles of law.[2] In *Avitzur v Avitzur*, 58 NY2d 108, 111; 446 NE2d 136 (1983), the New York Court of Appeals held that the secular terms of a ketubah[3] agreement, which was entered into as part of a religious marriage ceremony, could be enforced in civil court. After the parties were divorced civilly, the plaintiff, who wished to obtain a religious divorce, sought to enforce a provision of the ketubah requiring the parties to appear before a rabbinical tribunal having authority to resolve issues of traditional Jewish law. *Id*. at 112. Accepting the plaintiff's allegations as true for the purpose of a motion to dismiss, the *Avitzur* court concluded that the ketubah constituted a marital contract in which the parties had agreed "to refer the matter of a religious divorce to a nonjudicial forum." *Id*. at 113-114. Such an agreement was "closely analogous to an antenuptial agreement to arbitrate a dispute in accordance with the law and tradition chosen by the parties." *Id*. at 114. The ketubah "should ordinarily be entitled to no less dignity than any other civil contract to submit a dispute to a nonjudicial forum, so long as its enforcement violates neither the law nor the public policy of this State." *Id*. at 114. The defendant argued that enforcement of the ketubah in civil court would impermissibly entangle the civil court in religious matters. *Id*. The *Avitzur* court rejected that argument, cited *Jones*, and stated that the case could "be decided solely upon the application of neutral principles of contract law, without reference to any religious principle." *Id*. at 115.

---

[2] This Court is not bound by the decisions of the courts of other states, but such decisions may be considered for their persuasive value. *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559 n 38; 705 NW2d 365 (2005).

[3] In the Jewish faith, a ketubah is "[a] prenuptial agreement, signed by at least two independent witnesses, in which a husband promises to support his wife and to pay her a certain sum of money if the couple divorces." *Black's Law Dictionary* (10th ed).

In short, the relief sought by plaintiff in this action is simply to compel defendant to perform a secular obligation to which he contractually bound himself. In this regard, no doctrinal issue need be passed upon, no implementation of a religious duty is contemplated, and no interference with religious authority will result. . . . To the extent that an enforceable promise can be found by the application of neutral principles of contract law, plaintiff will have demonstrated entitlement to the relief sought. . . . [*Id.*]

In *Odatalla v Odatalla*, 355 NJ Super 305, 309-312; 810 A2d 93 (Ch Div, 2002), the New Jersey Superior Court cited *Jones* as well as *Avitzur* and concluded that a mahr agreement contained with an Islamic marriage license could be enforced. "As in *Jones, supra,* no doctrinal issue is involved—hence, no constitutional infringement." *Id.* at 310.

Furthermore, the Mahr Agreement is not void simply because it was entered into during an Islamic ceremony of marriage. Rather, enforcement of the secular parts of a written agreement is consistent with the constitutional mandate for a "free exercise" of religious beliefs, no matter how diverse they may be. If this Court can apply "neutral principles of law" to the enforcement of a Mahr Agreement, though religious in appearance, then the Mahr Agreement survives any constitutional implications. Enforcement of this Agreement will not violate the First Amendment proscriptions on the establishment of a church or the free exercise of religion in this country. [*Id.* at 311.]

Plaintiff here argues that the trial court erred in enforcing the mahr provision in the Islamic marriage certificate because the Legislature has not prescribed a method to resolve religious issues. However, the trial court expressly and repeatedly stated that it was *not* applying religious principles or doctrines but was instead applying Michigan common law regarding contracts. It is abundantly clear from the record that the trial court applied Michigan common law regarding contracts and determined that each of the elements for establishing a valid contract were met.[4] Plaintiff makes no argument challenging any particular element for establishing the existence of a contract. Nor does plaintiff cite any authority for his contention that a neutral principle of law must be derived from a statute rather than from Michigan common law when examining a religious document. A party may not simply announce a position and leave it to this Court to make his arguments and search for authority to support his position. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Failure to adequately brief an issue constitutes abandonment. *McIntosh v McIntosh*, 282 Mich App 471, 484; 768 NW2d 325 (2009). In any event, the persuasive analyses in *Avitzur* and *Odatalla* reflect that neutral principles of law may be derived from a state's common law of contracts. Plaintiff's argument is devoid of merit.

---

[4] "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015).

Plaintiff next argues that the trial court erred in relying on *Avitzur* because the religious agreement in that case called for submission of postmarital disputes to a rabbinical tribunal such that there was no judicial involvement in religious doctrine. By contrast, plaintiff argues, the trial court in this case applied Islamic principles to find that a contract existed. Plaintiff refers to the fact that the trial court heard testimony from two imams, one presented by each party, to support his contention that the trial court applied religious principles in this case. Plaintiff's argument lacks merit and reflects his misunderstanding of the analysis in *Avitzur*. Although the content of the marital agreement in *Avitzur* differed from that of the contract in this case, the relevant part of the holding in *Avitzur* was that the case could be decided solely through the application of neutral principles of contract law. *Avitzur*, 58 NY2d at 115. The same conclusion is reached here because the trial court applied neutral principles of contract law that did not require consideration of religious doctrine. See *id*. Although the trial court allowed each party to present testimony from an imam regarding the cultural implications of the Islamic marriage certificate, the trial court repeatedly emphasized that it would *not* rely on such testimony in determining whether a contract exists and that the court would instead apply Michigan law, and this is exactly what the trial court did when it decided the contract issue. The record thus refutes plaintiff's assertion that the trial court decided the case on the basis of religious principles.

Plaintiff next argues that the Islamic ceremony standing alone is not recognized as a legal marriage in Michigan, and he claims that the parties' subsequent civil ceremony was somehow ineffective (even though he signed the marriage certificate). This argument fails for multiple independent reasons. Initially, plaintiff has waived this issue by failing to include it in his statement of questions presented. *River Investment Group, LLC v Casab*, 289 Mich App 353, 360; 797 NW2d 1 (2010); MCR 7.215(C)(5). Further, plaintiff fails to clarify why he thinks the purported absence of a legal marriage is relevant to the issues he has raised on appeal. He provides no cogent argument that his contractual obligation to pay $50,000 is contingent on the existence of a legal marriage. The trial court found that the consideration for the $50,000 mahr was the Islamic marriage ceremony and the party that occurred that night. Plaintiff fails to acknowledge or address the trial court's finding on this point. Plaintiff also fails to provide an analysis of the contractual language to support any contention that his obligation to pay $50,000 was contingent on a legal marriage. Plaintiff cannot leave it to this Court to make his arguments for him. *Wilson*, 457 Mich at 243. His failure to adequately brief the issue constitutes abandonment. *McIntosh*, 282 Mich App at 484. Plaintiff also fails to discuss the trial court's pretrial ruling denying plaintiff's motion for a declaratory judgment that the parties were never legally married. The trial court found, on the basis of a presumptively valid civil marriage certificate and other evidence, that the parties were legally married. When an appellant fails to address the basis of a trial court's decision, this Court need not even consider granting relief. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

Plaintiff next makes an argument purporting to challenge the trial court's property distribution analysis. Plaintiff's argument lacks merit. A trial court's factual findings regarding property distribution are reviewed for clear error. *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id*. Substantial deference is afforded to the trial court's factual findings. *Id*. "If the trial court's

findings of fact are upheld, this Court must decide whether the trial court's dispositional ruling was fair and equitable in light of those facts. This Court will affirm the lower court's discretionary ruling unless it is left with the firm conviction that the division was inequitable." *Id*. at 717-718.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Id*. at 716-717. Although mathematical equality is not required in the division of the marital estate, the trial court must clearly explain any significant departure from congruence. *Id*. at 717.

> Trial courts may consider the following factors in dividing the marital estate: (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*.]

Plaintiff asserts that the trial court failed to analyze these property distribution factors when awarding $50,000 to defendant. However, the trial court did not award the $50,000 to defendant as part of any division of marital property. Rather, the $50,000 award was rendered separately from the division of marital assets. Defendant had filed a countercomplaint requesting enforcement or specific performance of the Islamic marriage certificate, which defendant claimed was a binding contract requiring plaintiff to pay $50,000 to defendant. In its October 31, 2017 opinion and order as well as the March 29, 2018 divorce judgment, the trial court addressed this contractual issue in a section that was separate from the property distribution section. Trial courts speak through their written judgments and orders. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Plaintiff's argument on this issue is thus premised on a misunderstanding of the basis for the trial court's award of $50,000 to defendant. Because plaintiff's argument misapprehends and fails to address the basis for the trial court's decision, plaintiff is not entitled to relief. *Derderian*, 263 Mich App at 381.

Plaintiff also refers to the trial court's declination to award spousal support. But the trial court's declination to award spousal support has nothing to do with plaintiff's appellate contention that the trial court was required to analyze the property distribution factors in connection with the award of $50,000 to defendant. Admittedly, the trial court referred to the $50,000 award to defendant as a factor in concluding that no award of spousal support was necessary, but plaintiff cites no authority establishing that there was anything improper in this aspect of the trial court's reasoning. As the trial court correctly noted, the property awarded to the parties is a factor that should be considered in deciding whether to award spousal support. See *Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003). Although the $50,000 was not awarded as part of a division of marital assets, plaintiff identifies no reason to conclude that the trial court's consideration of the $50,000 award when deciding whether to award spousal

support was improper. It is also notable that the trial court's reasoning in this regard favored plaintiff because it led to the trial court's decision that plaintiff was not required to pay spousal support.

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219.


/s/ Anica Letica
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra